IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LORITA DAVIS,                      §
                                   §
      Plaintiff,                   §
                                   §
V.                                 §          No. 3:21-cv-3057-G-BN
                                   §
SELECT PORTFOLIO SERVICING,        §
INC.,                              §
                                   §
      Defendant.                   §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. 636(b) and a standing order of reference from United States District Judge A. Joe Fish. *See* Dkt. No. 3.

Defendant Select Portfolio Servicing, Inc. ("SPS") has filed a Motion for Summary Judgment. *See* Dkt. No. 13. Plaintiff Lorita Davis has filed a response, *see* Dkt. No. 27, and Defendant has filed a reply, *see* Dkt. No. 28.

The undersigned now issues the following findings of fact, conclusions of law, and recommendation that the Court grant the motion for summary judgment.

**Background**

This case concerns the loan servicing and attempted foreclosure of Davis's home in Desoto, Texas (the "Property"). On March 31, 2004, Davis executed an

-1-

Adjustable-Rate Note (the "Note") payable to Aegis Funding Corporations, and its assigns. *See* Dkt. No. 15-2. Davis and Desi Davis, Lorita Davis's husband, executed a deed of trust (the "Deed of Trust") dated March 31, 2004. *See* Dkt. No. 15-3. The Note, Deed of Trust, and subsequent modification agreement are collectively referred to as the "Loan".

Aegis Funding Corporation assigned the Deed of Trust to Mortgage Electronic Registration Systems, Inc. ("MERS"), who assigned it to Wells Fargo Bank, N.A. ("Wells Fargo") as Trustee. *See* Dkt. No. 15-4. SPS is the servicer of Davis's loan. *See* Dkt No. 15-5.

Davis defaulted on the note, and, on June 21, 2011, while payment obligations under the Loan were in default, Davis executed a Loan Modification Agreement. *See* Dkt. No. 15-6. While Davis was still in default, Davis again applied for loss mitigation assistance, and on May 18, 2017, SPS offered her a Repayment Plan. S*ee* Dkt. No. 15-7. SPS sent a separate Trial Modification Plan Offer on June 25, 2017. *See* Dkt. No. 15-8.

On December 19, 2017, SPS sent a Notice of Default and Intent to Accelerate to Davis via certified mail. *See* Dkt. No. 15-9. On December 11, 2020, after Davis again applied for loss mitigation assistance, SPS sent a Trial Modification plan to Davis. Dkt. No. 15-10.

On September 29, 2021, after Davis again applied for loss mitigation assistance, SPS informed Davis in writing that following a review of the account, there were no home retention loss mitigation options for which she was approved. *See* Dkt. No. 15-11. On October 28, 2021, SPS, through its foreclosure counsel, sent a Notice of Acceleration and Posting to Davis at the Property address. Dkt. No. 15-12. This notice scheduled a foreclosure sale for December 7, 2021. *Id.*

In an attempt to prevent foreclosure of her home, Davis filed this action in state court on November 30, 2021. *See* Dkt. No. 1-3. On December 3, 2021, Davis obtained an ex parte temporary restraining order. *See* Dkt. No. 1-6. On December 8, 2021, SPS filed an answer to the lawsuit in state court and then removed the case to federal court. *See* Dkt. No. 1.

On April 25, 2022, Davis voluntarily dismissed her claims for violations of the Texas Property Code, Texas Deceptive Trade Practices Act, Promissory Estoppel, Negligent Misrepresentation, Breach of Duty of Cooperation, Breach of Fiduciary Duty, Breach of Good Faith and Fair Dealing, and Intentional Infliction of Emotional Distress. *See* Dkt. No. 12. SPS then filed this motion for summary judgment.

This is Davis's third lawsuit relating to this mortgage. The first lawsuit, Civil Action No. 3:13-cv-1759-N (the "2014 Suit"), was dismissed with prejudice on December 31, 2014. *See* Dkt No. 15-14. The second lawsuit, Civil Action No. 3:19-cv-

694-B (the "2020 Suit") was dismissed with prejudice on April 6, 2020. *See* Dkt No. 15-16. Both were filed against trustee Wells Fargo.

## Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625.

"The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

-7-

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*,780 F.2d 1190,

1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

### Analysis

### I.   Res judicata bars all claims that were or should have been litigated in the 2020 Suit.

Res judicata bars all claims that were or should have been litigated in the 2020 Suit. The rule of res judicata, or claim preclusion, "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2005).

In the Fifth Circuit, res judicata is appropriate if four conditions are met: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *See id.*; *see also Ellis v. Amex Life Ins. Co.,* 211 F.3d 935, 937 (5th Cir. 2000). To determine whether both suits

involve the same claim or cause of action, the court uses a "transactional test." As the

United States Court of Appeals for the Fifth Circuit explained:

> Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose. What grouping of facts constitutes a "transaction" or a "series of transactions" must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred.

*Test Masters,* 428 F.3d at 571 (internal citations omitted).

The critical issue is whether the two suits are based on the "same nucleus of operative facts." *Id.; see also In re Ark–La–Tex Timber Co.,* 482 F.3d 319, 330 (5th Cir. 2007); *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 313 (5th Cir. 2004). "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen,* 442 U.S. 127, 131 (1979).

The 2020 Suit was between Davis and Wells Fargo. "Courts uniformly have held that mortgage assignees and servicers are sufficiently in privity" for res judicata purposes. *Castillo v. Select Portfolio Servicing, Inc.*, No. DR-16-CV-044-AM/CW, 2017 WL 2999705 at *4 (W.D. Tex. Mar. 21, 2017) (collecting cases). SPS is the servicer of

-10-

Davis's mortgage, and Wells Fargo is the assignee and trustee. Wells Fargo and SPS are in privity for the purposes of res judicata.

The judgment in the 2020 Suit was a final judgment, rendered by a judge in the United States District Court for the Northern District of Texas, a court of competent jurisdiction. *See* Dkt. No. 15-16.

This suit and the 2020 Suit involve the same cause of action if they are based on the same nucleus of operative facts. This suit and the 2020 Suit involve the same events relating to the same mortgage, and so are based on the same nucleus of operative facts.

But the causes of action in this suit involve events that had not yet occurred at the time of the 2020 Suit. These are the September 29, 2020 letter stating that Davis was not approved for any loss mitigation options and the October 28, 2021 Notice of Acceleration and Posting.

To the extent that the causes of action in this suit are based on these two events, they are not barred by res judicata. But, if any of the causes of action in this suit are based on events from before the 2020 Suit, they will be barred by res judicata.

## II.   SPS is entitled to summary judgment on the breach of contract claim.

The Court should grant summary judgment on Davis's breach of contract claim.

Under Texas law, to succeed on a breach of contract claim, the plaintiff must show (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *See Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

Davis alleges in her petition that SPS failed to fulfil its requirements under the terms of the Loan itself, the Real Estate Settlement Procedures Act ("RESPA"), and unspecified Housing and Urban Development ("HUD") regulations. The undersigned will take up each of these in turn.

## A. The Loan

SPS argues that Davis's breach of contract claim fails because "she cannot prove that she complied with the subject contract." Dkt. No. 14 at 19. The undersigned disagrees.

The Fifth Circuit has articulated an exception to the general proposition that a party's prior breach of a contract will excuse the other party's performance in the context of a debt secured by a deed of trust covering real property. *See Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244-45 (5th Cir. 2018). This is based on the distinction between independent and dependent promises in Texas contract law. For mutually dependent promises, the breach of one promise will excuse the performance of the other, but, for reciprocal but independent promises, the breach of one promise

does not necessarily excuse the performance of the other. *See Barraza v. Bank of Am., N.A.*, No. EP-12-CV-35-KC, 2012 WL 12886438, at *9 (W.D. Tex. Aug. 13, 2012).

The intent of the parties determines whether promises are dependent or independent. *See id.* at *10. Courts will look to the language of the contract to determine this intent. *See id.* Courts will find that a promise is dependent if it "goes to the entire consideration of a contract" and "is conditional upon the prior performance by the other party." *Id.* (quoting *46933, Inc. v. Z & B Enters., Inc.*, 899 S.W.2d 800, 807-08 (Tex. App. – 1995, writ denied)). Courts will find that a promise is independent if it "goes only to part of the consideration on both sides and a breach may be compensated for in damages." *Id.* (quoting *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982)).

The court in *Barraza* explained that the plaintiffs' promise to make mortgage payments was independent of the defendants' promise to perform its post-default obligations under the deed of trust before executing a foreclosure sale. *See id.* The court in *Williams* further reasoned that the requirement in a deed of trust of post-default obligations such as a notice of intent to foreclose only has meaning if it can be enforced in the event of default. *See Williams*, 884 F.3d at 245. Reading the post-default obligations as being dependent on the plaintiff never entering default in the first place renders those obligations meaningless. *See id.* Such a reading would be inconsistent with the principle that Texas courts must "attempt to give effect to all

contract provisions so that none will be rendered meaningless." *Id.* (quoting *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)).

And, so, failing to fulfil post-default obligations before attempting to foreclose can be the basis for a breach of contract action and is not necessarily barred by default.

But there is no evidence that SPS failed to comply with its post-default obligations. Davis claims that the notice of sale was sent to her Post Office Box, *see* Dkt. No. 1-4 at 5, instead of the Property address, as is required by the Loan, *see* Dkt. No. 15-3 at 8. But the summary judgment evidence shows that the notice was sent to the Property address. *See* Dkt. No. 15-12 at 1.

Davis has not shown a genuine issue of material fact as to whether SPS breached the contract as to the requirements of the Loan.

**B. Real Estate Settlement Procedures Act**

Davis argues that SPS "was not permitted to accelerate or foreclose unless in accordance with and permitted by the COVID-19 guidelines that amended Regulation X of RESPA." Dkt. No. 1-4 at 6. The undersigned disagrees.

RESPA was amended by a final rule on June 30, 2021. *See* Protections for Borrowers Affected by the COVID-19 Emergency Under the Real Estate Settlement Procedures Act (RESPA), Regulation X, 86 Fed. Reg. 34,848 (June 30, 2021) (to be codified at 12 C.F.R. pt. 1024) ("COVID-19 RESPA Amendments").

> [T]his final rule establishes temporary special COVID-19 procedural safeguards that must be met for certain mortgages before the servicer can make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process because of a delinquency. This requirement generally is applicable only if (1) the borrower's mortgage loan obligation became more than 120 days delinquent on or after March 1, 2020, and (2) the statute of limitations applicable to the foreclosure action being taken in the laws of the State or municipality where the property securing the mortgage loan is located expires on or after January 1, 2022.

*Id.* at 34848-49.

Davis's loan obligation became delinquent on March 1, 2016. Dkt. No. 15-1 at 2. The mortgage loan obligation became more than 120 days delinquent before March 1, 2020. And so the special procedural safeguards from the COVID-19 RESPA Amendments do not apply to Davis's loan.

Davis has not shown a genuine issue of material fact as to whether SPS breached the contract as to the COVID-19 RESPA Amendments.

### C. HUD Regulations

Davis argues that "[t]he HUD regulations are part of an integrated contract to which [SPS] was bound to comply." Dkt. No. 1-4 at 6. SPS argues that "Plaintiff has not and cannot establish that any HUD regulations apply to this Loan, that Plaintiff has a private right of action for same, or that there was any violation of any HUD regulation." Dkt. No. 14 at 19. The undersigned agrees with SPS's arguments.

-15-

The Fifth Circuit has held that "HUD regulations do not give the borrower a private cause of action unless ... expressly incorporated into the lender-borrower agreement." *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 196 (5th Cir. 2016).

The only evidence Davis provides that any HUD regulations are integrated into the Loan is a sentence from the Deed of Trust that states that the Lender "may invoke the power of sale and any other remedies permitted by Applicable Law," which is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Dkt. No. 15-3 at 2, 10.

This sentence does not expressly reference any HUD regulations. It does not expressly incorporate any HUD regulations into the Loan. Neither does Davis specify which HUD regulations SPS has not followed.

Without more, Davis cannot show a genuine issue of material fact as to whether SPS breached the contract as to HUD regulations.

## III. SPS is entitled to summary judgment on the Texas Debt Collection Act claim.

The Court should grant SPS's motion for summary judgment on the Texas Debt Collection Act ("TDCA") claim.

"In order to state a claim under the TDCA, Plaintiff must show: (1) the debt at issue is a consumer debt; (2) Defendants are debt collectors within the meaning of the TDCA; (3) Defendants committed a wrongful act in violation of the TDCA; (4) the

-16-

wrongful act was committed against Plaintiff; and (5) Plaintiff was injured as result of Defendants' wrongful act." *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 743 (E.D. Tex. 2013).

A consumer debt is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." TEX. FIN. CODE § 392.001(2). A loan for a personal home fits this definition.

A debt collector is "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." TEX. FIN. CODE § 392.001(6). Mortgage servicers are debt collectors in the meaning of the TDCA. *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013).

Davis argues that SPS's wrongful act is seeking to foreclose on her home without "giving the proper notices as required by Texas law." Dkt. No. 1-4 at 9. But the TDCA does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." TEX. FIN. CODE § 392.301(b)(3).

And Davis does not provide any evidence that SPS did not provide the notices required by Texas Law. The undersigned takes this to mean the requirements of

-17-

Texas Property Code § 51.002. Texas Property Code § 51.002 requires that a mortgage servicer serve a debtor in default under a deed of trust with written notice of default by certified mail and give the debtor at least 20 days to cure the default before the servicer can give a notice of sale. *See* TEX. PROP. CODE § 51.002(d). That notice of sale must then be served by certified mail on each debtor that is obligated to pay the debt at least 21 days before the foreclosure sale date. *See* TEX. PROP. CODE § 51.002(b).

The summary judgment evidence shows that SPS served Davis with a Notice of Default on December 19, 2017, giving 30 days to cure the default. *See* Dkt. No. 15-9. SPS's counsel sent the Notice of Trustee's Sale on October 28, 2021, which set the foreclosure sale date for December 7, 2021, 40 days later. *See* Dkt. No. 15-12.

The summary judgment evidence shows that SPS complied with Section 51.002's requirements before a foreclosure sale. And so Davis has not shown a genuine issue of material fact as to whether SPS violated the TDCA.

## IV. SPS is entitled to summary judgment on the unreasonable collection efforts claim.

The Court should grant SPS's motion for summary judgment on the unreasonable collection efforts claim.

"Unreasonable collection is an intentional tort. But the elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App. –

Dallas 2008, no pet.). "Generally speaking, however, to recover on such a claim, a plaintiff must prove that a defendant's debt collection efforts amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (citing *EMC Mortg. Corp.*, 252 S.W.3d at 868) (cleaned up).

The summary judgment evidence does not show, and Davis does not allege, any facts to support that SPS's collection efforts amounted to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm. And so Davis has not shown a genuine issue of material fact as to whether SPS committed the tort of unreasonable collection efforts.

## V.    SPS is entitled to summary judgment on the Real Estate Settlement Procedures Act and Regulation X claim

The Court should grant SPS's motion for summary judgment on the RESPA and Regulation X claim. Davis claims that SPS engaged in dual tracking in violation of 12 C.F.R. 1024, or Regulation X. She also claims that SPS failed to "make good faith efforts to establish live contact with [Davis once she became] a delinquent borrower no later than the 36th day of [her] delinquency." 12 C.F.R § 1024.39. Finally, she claims that SPS did not appoint a single point of contact, although she does not specify what statute or regulation, if any, requires this.

Regulation X restricts a mortgage servicer's ability to engage in dual tracking, or simultaneously evaluating a borrower's application for loss mitigation options and

moving forward with foreclosure. *See* 12 C.F.R. § 1024.41. Federal courts have recognized "a federal cause of action against a servicer for dual tracking" under Regulation X. *Wentzell v. JPMorgan Chase Bank, Nat. Ass'n*, 627 Fed. Appx. 314, 318 n.4 (5th Cir. 2015).

"A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." 12 C.F.R. 1024.41(i).

Davis has been delinquent on the Loan since March 1, 2016. Dkt. No. 15-1 at 2. And so Regulation X's requirements only apply to Davis's first complete loss mitigation application after this date.

Davis submitted a loss mitigation application and was offered a repayment plan on May 18, 2017. Dkt. No. 15-7. Davis can only bring a claim under Regulation X as to this loss mitigation application.

But this event occurred before the 2020 Suit. Davis could have brought a claim under Regulation X in the 2020 Suit. And so this claim is barred under res judicata, as discussed above.

**VI.    SPS is entitled to summary judgment on the gross negligence claim.**

The Court should grant SPS's motion for summary judgment on the gross negligence claim.

"In Texas, gross negligence is a heightened form of negligence that requires a plaintiff to allege and ultimately prove (1) an act or omission that, viewed objectively from the actor's standpoint, involved an extreme degree of risk and (2) the actor had actual, subjective awareness of the risk and proceeded anyway with a conscious indifference." *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 626 (N.D. Tex. 2011). "What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages." *Bykowicz v. Pulte Home Corp.*, 950 F.2d 1046, 1053 (5th Cir. 1992) (quoting *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (Tex.1981)) (emphasis in original). "Further, Plaintiffs must proffer evidence that their damages arising from Defendants' gross negligence are more than alleged economic harm and mental anguish or anxiety." *DeFranceschi, N.A.*, 837 F. Supp. 2d at 626.

Davis does not allege, and the summary judgment evidence does not show, any act involving an extreme degree of risk. Nor does she offer evidence that her damages are more than alleged economic harm and mental anguish.

Davis has not shown a genuine issue of material fact as to whether SPS committed gross negligence.

**VII. SPS is entitled to summary judgment on the declaratory judgment and accounting claims.**

Finally, to the extent that Davis seeks declaratory or injunctive relief, a declaratory judgment and an injunction "are forms of relief based on underlying claims." *Taylor v. Chase Home Fin., N.A.*, No. 3:13-cv-4793-M-BN, 2014 WL 1494061, at *4 (N.D. Tex. Apr. 15, 2014) (citing *Collin Cty., Tex. v. Homeowners Ass 'n for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 170-71 (5th Cir. 1990) (declaratory judgment); *Cook v. Wells Fargo Bank, N.A.*, No. 3:10-cv-592-D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (injunctive relief)). An accounting also is an equitable remedy that is not an independent cause of action. See *Henry v. CitiMortgage, Inc.*, No. 4:11–cv–83, 2011 WL 2261166, at *8 (E.D. Tex. May 10, 2011).

And, "[b]ecause the undersigned has determined that none of [Davis's] claims can withstand dismissal at this time, [her] requests for declaratory and injunctive relief cannot survive." *Taylor*, 2014 WL 1494061, at *4.

## Recommendation

The Court should grant Defendant's motion for summary judgment and dismiss Plaintiff Lorita Davis's remaining claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 30, 2023

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE